TARA B. VOSS, CASB No. 261967
tvoss@peacockpiper.com
SAMANTHA W. MAHONEY, CASB No. 293530
smahoney@peacockpiper.com
PEACOK PIPER TONG + VOSS
100 W. Broadway, Suite 610
Long Beach, California 90802
Telephone: (562) 320-8880
Facsimile: (562) 735-3950
PPTV Matter No.  1014-5


Attorneys for Specially Appearing Defendant,
AMIS KALON, M/V IMO Number 9520807

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORLD FUEL SERVICES (SINGAPORE) PTE LTD,<br><br>Plaintiff,<br><br>vs.<br><br>AMIS KALON, M/V IMO Number 9520807, in rem,<br><br>Defendant. | Case No. 2:20-CV-10707-CAS (JEM)<br><br>**EX PARTE APPLICATION FOR AN ORDER FIXING BOND IN EXCHANGE FOR RELEASE OF THE MV AMIS KALON**<br><br>Complaint filed:  November 24, 2020<br>Date of arrest: November 27, 2020<br><br>**RESTRICTED APPEARANCE PURSUANT TO FRCP SUPPLEMENTAL ADMIRALTY RULE E(8)** |

///

PLEASE TAKE NOTICE that pursuant to Local rule 7-19, specially appearing

- 1 -

1  Defendant AMIS KALON, M/V IMO Number 9520807 (the "Vessel"), by and through

2  its counsel, hereby applies to the Court *ex parte* for an Order fixing the amount of the

3  bond for the release of the Vessel.[1]  FRCP SUPP AMC Rule E(8).

4         The basis for this *ex parte* is simple.  The Vessel was arrested on November 27,

5  2020 in Long Beach, California.  The Vessel was scheduled to arrive in Long Beach,

6  California for refueling before departing to continue its journey. As a result of the

7  arrest, it is currently three and a half days behind schedule.  Because the parties have

8  been unable to agree on the form and amount of security, the Vessel seeks the Court's

9  assistance in fixing the amount so that it can be released and avoid any further delays.

10  Every additional day the Vessel is delayed, the potential for commercial damages

11  increases.

12         The Vessel's counsel provided notice of the *ex parte* application *via* email on

13  November 30, 2020, at 7:17 a.m. PST to Jess G. Webster

14  (Jess.Webster@millernash.com), of Miller Nash Graham & Dunn LLP, Pier 70,

15  2801 Alaskan Way - Suite 300, Seattle, Washington 98121, copying co-counsel Chris

16  Helmer (Chris.Helmer@millernash.com), Trajan Perez

17  (Trajan.Perez@millernash.com), and Tyler Bowlin (Tyler.Bowlin@millernash.com).

18  Counsel did not stipulate to the relief requested and would not agree to the Vessel's

19  proposed bond amount. (Declaration of Tara Voss ("Voss Decl.") ¶¶ 6-7).

20         While counsel appreciates Judge Snyder's Procedure No. 5, which generally

21  provides the party opposing an *ex parte* application 48-hours to respond, counsel

22  requests a **shortened time period** for several reasons (1) this case involves a Rule C

23  _____

24  [1] "Supplemental Rule" refers to the Supplemental Rules for Admiralty of Maritime
Claims and Asset Forfeiture actions to the Federal Rules of Civil Procedures.

25  Supplemental Rule E(8) allows a defendant who appears to defend a claim *in rem* or
attachment to restrict his appearance to that claim only; his defense does not constitute

26  an appearance for the purposes of any other claim to which such process is not

27  available or has not been served. *United States v. Republic Marine, Inc.*, 829 F.2d 1399
(7th Cir. 1987).

28

- 2 -

1  arrest of a vessel ordered without notice to the Vessel and without an opportunity to

2  respond prior to the arrest; (2) in these circumstances and pursuant to Supplemental

3  Admiralty Rule E(4), a party subject to an arrest is entitled to a "prompt" hearing,

4  which under these extraordinary circumstances warrants a decision within 24-hours or

5  less; and, (3) a bond cannot be obtained and vessel released without first setting the

6  amount of the bond.  Given the extraordinary circumstances of the maritime rules for

7  vessel arrests, Defendant respectfully requests that the Court issue its order on or before

8  close of business on Tuesday, December 1, 2020.

9       This *ex parte* application is based on the accompanying Memorandum or Points

10  and Authorities, Declaration of Tara Voss, any exhibits attached thereto, all papers on

11  file in the captioned action, and such other further documents or argument as the Court

12  may consider in ruling upon this application.

13

14  DATED:  November 30, 2020          /S/ Tara B. Voss_____

15                                     TARA B. VOSS
                                       SAMANTHA W. MAHONEY
16                                     PEACOCK PIPER TONG + VOSS
                                       Attorneys for Specially Appearing
17                                     Defendant AMIS KALON, M/V IMO
18                                     Number 9520807

19

20

21

22

23

24

25

26

27

28

## I.     __INTRODUCTION__

Despite efforts to negotiate alternative security in lieu of arrest, on November 27, 2020, the AMIS KALON, M/V IMO Number 9520807 (the "Vessel") was arrested at the Port of Long Beach pursuant to this Court's Order Authorizing the Issuance of an Arrest Warrant. (Doc. No. 11).  Since the arrest, the parties have been unable to agree on an appropriate bond amount.  Thus, Defendant brings this *ex parte* application requesting an order from the Court fixing the amount of the bond at __US$400,000__ in exchange for the Vessel's release pursuant to Federal Rule of Civil Procedure Supplemental Rule E(5)(a).

## II.    __FACTS__

Plaintiffs initiated this action on November 24, 2020, by the filing of a Complaint and asserting a maritime lien for the cost of fuel supplied to the Vessel on or about April 30, 2019.  The Complaint asserts that 24Vision, a former charterer of the Vessel, ordered approximately 850 metric tons of fuel at US$428/metric ton.  That fuel was supplied to the Vessel, but 24Vision failed to pay the invoiced amount of $362,970.96 when it came due on June 14, 2019.  (Complaint ¶¶ 10-14, Ex. D).  As a result, Plaintiffs assert a maritime lien against the vessel.

Although the parties attempted to negotiate substitute security to avoid the arrest of the Vessel, they were not able to reach an agreement and the Vessel was arrested on November 27, 2020.  (Voss Decl. ¶¶ 2, 4-7).

Because the Vessel was only scheduled to be in Long Beach for a brief visit to take on fuel, it is currently behind schedule and is becoming more and more delayed every day.  (Voss Decl. ¶¶ 2-3).  To avoid further delay and potential commercial damages, the Vessel seeks the Court's involvement to fix the bond amount of $400,000 for the release of the Vessel.

1

### III.   ARGUMENT

2

#### A. Ex Parte Standard.

3 Ex parte relief is appropriate where the applicant will suffer irreparable prejudice

4 if the motion is heard according to regular noticed procedures and is without fault in

5 creating the need for ex parte relief.  *Mission Power Engineering Co. v. Continental*

6 *Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).  Both of these criteria are satisfied in

7 the case at bar.

8 Good cause exists to fix a bond so that the Vessel can be released.  The Vessel

9 departed Vancouver, Canada on November 26, 2020 after loading cargo destined for

10 the Port of Mejillones, Chile.  (Voss Decl.¶ 2).  It arrived at the Port of Long Beach for

11 bunkering (taking on fuel) on November 26, 2020.  The Vessel was arrested on

12 November 27, 2020.  (Voss Decl.¶ 2).  The Vessel was only scheduled to be in port for

13 a short period of time to take on fuel oil.  (Voss Decl. ¶ 2).  As of the time of filing, the

14 Vessel is now three and a half (31/2) days behind schedule.  (Voss Decl. ¶ 3).  The

15 Vessel is incurring material commercial losses including loss of hire, extra Port fees

16 and related disbursements, as well as extra fuel costs.  Any further delays will result in

17 serious commercial damages.  (Voss Decl. ¶ 3).

18 Because the parties cannot agree on a proper bond amount, the Vessel needs the

19 Court's immediate assistance to set the bond amount, so the Vessel can be released.

20 Every additional day that the Vessel is arrested, the potential commercial damages

21 grow.

22

#### B. The Court Should Fix the Bond Amount at $400,000.

23 "Since attachment or arrest of property can have an extremely disrupting effect

24 upon the owners or possessors of the property... release by special bond is provided."

25 *Gerard Const. v. Motor Vessel Virginia*, 480 F.Supp.488, 490 (W.D. Penn. 1979).

26 Federal Rule of Civil Procedure, Supplemental Rule E(5)(a) provides for release of

27 property on the giving of security, to be approved by the court or clerk, or by stipulation

28 of the parties, conditioned to answer the judgment of the court. Where the parties

cannot agree upon the amount, the court shall fix the principal sum of the bond or stipulation at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs; but the principal sum shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller.[2]  The bond or stipulation shall be conditioned for the payment of the principal sum and interest thereon at 6 percent per annum. Fed. R. Civ. Proc. Supp. R. E(5)(a).  Courts follow the "fairly stated" standard of Rule E(5)(a). *See Billfish Marina One, Inc. v. M/Y Hideaway*, 2017 AMC 1743 (S.D. Fla. 2017). Thus, a court is to calculate the bond amount based upon the value of the Plaintiff's claim "fairly stated", including interest and court costs.

### 1.  Plaintiff's Claim Fairly Stated is Less than $400,000.

The Complaint alleges $475,810.18 in damages, plus its attorney's fees and custodial expenses (Complaint, ¶ 13, Prayer for Relief ¶¶ 1-2).  This amount, however, is overstated, belied by the Exhibits to the Complaint, and not recoverable as a matter of law. Furthermore, Plaintiff's request for a bond amount of $550,000 is not supportable.

**Value of the Principal Claim**.  Maritime liens under United States law are governed by the Federal Maritime Lien Act (FMLA).  A maritime lien is limited to the value of the lien itself.  *Triton Marine Fuels Ltd. V. MV Pacific Chukotka*, 671 F. Supp 2d 753, 759 (D. Md. 2009).  The amount and extent of a necessaries lien for the provision of fuel supplied to a vessel is the price for the fuel agreed to in the underlying fuel supply contract.  *Id*. at 761.  Here, that amount is clearly set forth in Exhibits A and D to the Complaint, which provide that the principal sum owed for the fuel is **US$362,970.96**.

**Interest**. Pursuant to federal maritime law and the FMLA, a party seeking to

---

[2] There is no dispute that the value of the vessel would greatly exceed $400,000, and therefore for the purpose of calculating the bond, the lesser amount of $400,000 is appropriate.  (Voss Decl. ¶ 5.)

1    enforce a maritime lien may be entitled to pre-judgement interest at the discretion of the

2    court.  While requests for pre-judgment interest are often granted, the interest rates

3    applied have been modest.  Numerous courts have rejected requests for pre-judgment

4    interest at amounts such as two percent-a-month, in favor of lower rates based on

5    "short-term, risk free obligations".  *Id.* at 764-65.  In *Triton Marine Fuels, Ltd*., for

6    example, the Court awarded pre-judgment interest at the three-month average Treasury

7    bill rate of 2.34 percent.  *Id.* at 765.  These are modest interest rates which, if applied to

8    the amounts at issue between June 2019 and November 2020, would be approximately

9    $6,000.  Even if we were to apply the interest rate of 6 percent per annum (as set forth

10   in Supplemental Rule E(5)(a)) for the purpose of securing a bond for the release

11   property under arrest), between June 14, 2019 to December 14, 2020, interest would

12   have accrued in the amount of **US$32,667.39**.

13       **Costs**.  Local Rule E.9 provides guidance with respect to the amount of costs to

14   be included in the calculation of a bond amount.  In relation to Rule E(2)(b), which also

15   allows for an order requiring security for costs like Rule E(5)(b), Local Rule E.9

16   specifically caps the amount of security for costs at **US$500.00**, unless otherwise

17   ordered by the Court.  Local Admiralty Rule E.9 (83-E.2) ("Security for Costs").  There

18   is no reason to alter the amount set by statute, as this action was only initiated several

19   days ago; therefore, it can be assumed the amount of recoverable court costs is limited.

20       **Total**.  Based on the foregoing, Defendant requests the Court fix the bond in the

21   amount of **US$400,000**.  This represents Plaintiff's claim "fairly stated" with accrued

22   interest and costs as follows: (a) the principal sum of $362,970.96, being the principal

23   value of the fuel supplied to the vessel; (b) accrued interest of $32,667.39 (representing

24   6% per annum for 18 months); and, (c) costs.  Although Local Rule E.9 contemplates

25   only $500 in costs, this bond amount provides $4,361.65 in excess of the principal and

26   interest to cover a generous amount of costs.

27       The Vessel is ready, willing and able to provide a bond for the release of the

28   Vessel. All that remains is for the Court to fix the amount of the bond and order the

- 7 -

release of the Vessel accordingly.

### 2. **Plaintiff is Not Entitled to Security for Costs that Do Not Fall Within the Alleged Lien Against the Vessel.**

As indicated above, the Complaint alleges a maritime lien for the provision of fuel to the Vessel.  A maritime lien is limited to the value of the lien itself.  *Triton* at 759.  A maritime lien does **not** include damages arising from attorneys' fees or costs associated with the enforcement of the lien.  *Triton* at 761–63 (citing numerous authorities).  Because Plaintiff is not entitled to recover its attorneys' fees against the Vessel, Plaintiff's legal expenses cannot reasonably be included in the calculation of the bond amount.  *Id.*

Furthermore, the bond amount does not include custodial fees.  First, Supplemental Rule E(5)(a), by its terms identifies only "accrued interest and costs" it does not require that the bond cover a party's custodial fees.  Second, as discussed above, Local Rule E.9 caps the amount of security for costs at $500.00, unless otherwise ordered by the Court.  Local Admiralty Rule E.9 (83-E.2) ("Security for Costs").  Thus, even if the "costs" in Supplemental Rule E(5)(a) could be construed to include custodial fees, they should be capped at $500.  Third, even if custodial fees were included in the calculation (which they should not be) the amount would be minimal.  The vessel was arrested on November 27, 2020 and once the bond amount is established, the vessel will be released, and no further custodial fees incurred.  The requested bond amount includes $4,361.65 in excess of the principal and interest to cover a generous amount of costs.  Finally, the Court can order that additional security be posted later if there is a change in circumstance.

### IV.   **CONCLUSION**

Based on the foregoing, the Vessel respectfully requests that the Court grant its *ex parte* application and fix the bond amount at $400,000 so that a bond can be filed and the Vessel released.

4829-6398-2547, v. 1

1   DATED:  November 30, 2020                    /S/Tara B. Voss_____

2                                                TARA B. VOSS
                                                 SAMANTHA W. MAHONEY
3                                                PEACOCK PIPER TONG + VOSS

4                                                Attorneys for Specially Appearing
                                                 Defendant AMIS KALON, M/V IMO
5                                                Number 9520807

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28